IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION 07-0754-WS-M |
| BLUE WATER OFF SHORE, LLC, ) ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on a "general motion in limine" filed by Blue Water Off Shore, LLC ("Blue Water"). (Doc. 164). New Hampshire Insurance Company ("New Hampshire") has filed a response, (Doc. 192), and the motion is ripe for resolution.

**I. Pleading of the Fifth Amendment.**

In connection with the parties' cross-motions for summary judgment, Blue Water argued that the Court could not consider Captain Cooper's invocation of the Fifth Amendment at his deposition. The Court rejected that position based on Blue Water's own authorities. (Doc. 149 at 12-16). On motion in limine, Blue Water simply refers the Court to its previous briefing on the issue. (Doc. 164 at 2, ¶ 3).

Blue Water is thus seeking reconsideration of a previous court ruling. "A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *accord Gougler v. Sirius Products, Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005). Because Blue Water attempts to show none of the above, its motion to reconsider is improper. Even were the Court considering the matter

for the first time, it would reach the same result as it did in its order on motion for summary judgment, and for the reasons set forth therein.

The motion in limine is **denied**.  New Hampshire will be permitted to present evidence that Cooper pleaded the Fifth Amendment.

## II.  Horizontal Gaze Nystagmus ("HGN") Test.

Before arresting Cooper for boating under the influence, Officer Kelley administered an HGN test which, he testified, "showed extreme signs of alcohol." (Kelley Deposition at 50).  Blue Water first argues that New Hampshire conceded at the pretrial conference that this evidence is inadmissible.  New Hampshire denies the assertion, and the Court has no independent recollection of such an admission.

Blue Water relies on the arguments it made against the Court's consideration of this evidence on cross-motions for summary judgment.  (Doc. 164 at 1, ¶ 1).  The Court has already rejected Blue Water's "remote and speculative" argument, (Doc. 149 at 9), and Blue Water's request for reconsideration of that ruling fails for the reasons stated in Part I.

Blue Water's only other argument on motion for summary judgment was the skeletal one that the Court should not consider the HGN test result "without a proper foundation demonstrating the test's scientific reliability and acceptance by the scientific community."  (Doc. 137 at 8).  The Court did not resolve this issue on motion for summary judgment, because New Hampshire did not make even the more limited showing it pressed as the governing standard.  (Doc. 149 at 8-9).  The Court thus returns to this issue.

Blue Water's challenge is one under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which address the reliability

required for the admission of expert scientific testimony.[1]  Under *Daubert* and like cases, "[e]xpert testimony may be admitted into evidence if ... the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* ....."  *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted).  The burden of establishing reliability lies with the proponent.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

Rule 702 identifies three components of reliability: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Blue Water's challenge goes only to the second of these elements.  *Daubert* identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific community.  509 U.S. at 593-94.[2]

New Hampshire implicitly concedes it is not prepared to make this evidentiary showing.  Instead, it cites *United States v. Nguyen*, 2008 WL 540230 (E.D. Cal. 2008),

---

[1] Previous court order required all expert witness challenges to be filed not later than two weeks before the final pretrial conference.  (Doc. 23, Attachment at 3, ¶ 4.F).  While Blue Water filed a timely *Daubert* motion to exclude expert testimony of Officer Kelley, it did so only with respect to his opinions that Cooper was intoxicated at the time of the allision and that intoxication caused the allision.  (Doc. 151 at 1).  Nevertheless, Blue Water's challenge is timely because it was raised in connection with the motions for summary judgment, well before the final pretrial conference.  New Hampshire does not argue otherwise.

[2] "Notably, ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis."  *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

for the proposition that the "reliability of [HGN test] methodology may be taken for granted," *id*. at *11, obviating proof thereof.  Relying on *Nguyen*, New Hampshire argues that the only reliability foundation necessary for admission of the HGN test is evidence that it "was administered properly by an officer qualified with requisite training and experience to administer the test," and it asserts that Officer Kelley will be able to supply this evidence at trial.  (Doc. 192 at 2).

A court has "the discretionary authority needed ... to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  Thus, for example, "[t]here is rarely a reason for a court to consider opinions that medical doctors routinely and widely recognize as true, like cigarette smoking causes lung cancer and heart disease, too much alcohol causes cirrhosis of the liver, and that the ingestion of sufficient amounts of arsenic causes death."  *McClain v. Metabolife International, Inc*., 401 F.3d 1233, 1239 n.5 (11th Cir. 2005) (citing *Kumho Tire*).

"The HGN test relies on the scientific principle that alcohol will cause a type of nystagmus, which in turn can be detected by a properly trained officer."  *Nguyen*, 2008 WL 540230 at *10.  This principle is not novel or controversial; on the contrary, "[i]t is ... well established that alcohol can cause exaggerated nystagmus."  *Id*. at *12 (citing cases from 16 state jurisdictions).  Federal cases likewise routinely accept this proposition.[3]

Likewise, "[p]ublished cases from across the country make clear that the method

---

[3]*E.g., Pennsylvania v. Muniz*, 496 U.S. 582, 585 n.1 (1990); *United States v. Apeland*, 238 Fed. Appx. 272, 273 n.1 (9th Cir. 2007); *Johnson v. City of Tulsa*, 199 Fed. Appx. 677, 680 n.3 (10th Cir. 2006); *Stemler v. City of Florence*, 126 F.3d 856, 862 (6th Cir. 1997); *Kurilik v. Wolfenbarger*, 2008 WL 2115248 at *3 n.2 (E.D. Mich. 2008); *United States v. Horn*, 185 F. Supp. 2d 530, 555 (D. Md. 2002) (based on a review of voluminous materials, including state cases and articles cited therein, "it cannot be disputed that there is a sufficient factual basis to support the causal connection between observable exaggerated horizontal gaze nystagmus in a suspect's eye and the ingestion of alcohol by that person," with "[t]his connection ... so well established that it is appropriate to be judicially noted").

for determining the presence of exaggerated nystagmus is not complex and such evidence is routinely introduced in trials, under either *Frye* or *Daubert* based state rules of evidence." *Nguyen*, 2008 540230 at *12 (citing cases from five jurisdictions, including *State v. Ito*, 978 P.2d 191, 199-200 (Haw. App. 1999), which cites cases from nine additional jurisdictions).

Because the reliability of both the scientific principle underlying HGN testing and the methodology of the test are so well established, the *Nguyen* Court ruled that evidence of HGN testing and its results is admissible if the administering officer establishes that he has the requisite training and experience in administering the test and in detecting exaggerated nystagmus and that his training included the fact that alcohol consumption may cause exaggerated nystagmus. 2008 WL 540230 at *13. New Hampshire apparently is prepared to make this showing.

Because *Kumho Tire* and *McClain* envision truncated or obviated reliability determinations in routine cases, and because the reliability of the scientific principle underlying HGN testing and the methodology of the test fall in this category, New Hampshire need not produce evidence of the reliability of the principle or methodology other than Officer Kelley's testimony that he was so trained. The motion in limine is **denied**.

### III.  Portable Breath Alcohol Test.

Before arresting Cooper for boating under the influence, Officer Kelley administered a portable breath alcohol test, which registered a blood alcohol level of 0.167. Blue Water argues that New Hampshire conceded at the pretrial conference that this evidence is inadmissible, but New Hampshire states it conceded only that the result of the test is inadmissible (not the fact a test was given), and the Court has no independent recollection.

Blue Water relies on its argument made in connection with the motions for

summary judgment.  (Doc. 164 at 1, ¶ 2).  The only argument made therein is that New Hampshire must comply with the requirements of Alabama law for admissibility.  (Doc. 128 at 4-5).  Blue Water has not explained why a federal court sitting in diversity must apply Alabama's evidentiary rules,[4] and the Court will not supply the deficiency.

The motion in limine is **granted** with respect to the results of the testing and **denied** in all other respects.  New Hampshire will be permitted to present evidence that Kelley administered a portable breath alcohol test but will not be permitted to present evidence of the result of the test unless Blue Water places it in issue and New Hampshire establishes its admissibility.

## IV.  Telefax of Policy.

William Hodgens testified that he, through his office manager, telefaxed a copy of the insurance policy at issue ("the Policy") to Flowers Insurance Agency ("Flowers").  (Hodgens Deposition at 31-32, 105).  There is also in evidence a document purporting to be a telefax cover sheet from Hodgens' office manager to Donna Phillips of Flowers, displaying Flowers' telefax number, identifying the subject as the attached Policy, and bearing a stamped "faxed" confirmation with the date and the office manager's initials.  (Doc. 192, Exhibit A at 1).  There is, in short, ample evidence that the Policy was telefaxed to Flowers on February 13, 2007.

Blue Water moves the exclusion of "Hodgens's testimony that the policy was faxed to [Flowers]."  (Doc. 164 at 2, ¶ 4).  As with the other aspects of its motion, Blue Water relies exclusively on its previous briefing.  (*Id.*).  That briefing, however, did not seek the exclusion of Hodgens' testimony that the Policy was faxed, or of the exhibit supporting his testimony.  Instead, Blue Water's briefing was limited to Hodgens'

---

[4] Federal evidentiary rules generally apply in diversity cases unless the state rule constitutes substantive rather than procedural law.  *E.g., Clanton v. Inter.net Global, L.L.C.*, 435 F.3d 1319, 1326 n.8 (11th Cir. 2006); *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004).

testimony concerning what he overheard of a telephone conversation between the office manager and Phillips immediately after the telefax was sent. (Doc. 128 at 14; Doc. 137 at 18-20). Blue Water's present motion therefore can extend no further.[5]

Hodgens testified that, although he did not hear what Phillips said, he heard his office manager ask, "Did you get the fax," then pause, then say, "Well, good. Thank you." (Hodgens Deposition at 108). New Hampshire offers this evidence to prove that Flowers received the telefax (a fact which Blue Water disputes). New Hampshire admits that this testimony is hearsay but argues it is admissible as the office manager's present sense impression. (Doc. 192 at 5-6).

Among the statements not excluded by the hearsay rule is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). In *United States v. Peacock*, 654 F.2d 339 (5th Cir. 1981), the government charged that a witness in a criminal investigation was killed by the defendant, a target of the investigation. Before his death, the defendant telephoned the victim, said the investigation had been stopped due to insufficient evidence, and told the victim to get out of town. The victim told his wife of this conversation immediately after it occurred. *Id*. at 350. The Court held that, because the victim repeated the defendant's comments to his wife immediately after the conversation, his statement constituted a present sense impression, such that the wife's testimony fell within Rule 803(1). *Id*.

Blue Water argues that *Peacock* is distinguishable because there, the witness was told what the other party to the conversation said, while here the office manager did not tell Hodgens what Phillips said; what Phillips said must be inferred from what the office manager said to Phillips. (Doc. 137 at 18-19). Blue Water does not explain the

---

[5]Even if Blue Water intended its motion to reach farther than its briefing, it has offered no basis for ruling inadmissible either Hodgens' testimony that the Policy was telefaxed to Flowers or the corroborating exhibit.

significance of this distinction for purposes of Rule 803(1).  In both cases, what the witness heard reflected a second party's present sense impression of what the second party had just heard from a third party, and that is enough to make *Peacock* controlling.[6]

Blue Water's only other argument is that, even if what his office manager said falls within Rule 803(1), what Phillips said to the office manager is itself hearsay for which no exception or exclusion exists.  (Doc. 137 at 19).  To be hearsay, however, the witness (or declarant, in a double hearsay situation) must be relating a "statement" of another person.  Fed. R. Evid. 801(c).  For the witness or declarant to be relating a statement, he or she must be relating either "an oral or written assertion" or "nonverbal conduct" intended as an assertion by the other person.  *Id*. 801(a).  Neither Hodgens nor his office manager is relating what Phillips said (which is unknown), and neither is describing Phillips' nonverbal conduct (which is likewise unknown).  What Phillips may have said is merely an inference that may be drawn from what the office manager said.

The motion in limine is **denied**.  New Hampshire will be permitted to present oral and documentary evidence that the Policy was telefaxed to Flowers, and it will also be permitted to present evidence as to what Hodgens heard of his office manager's telephone conversation with Phillips.

DONE and ORDERED this 27th day of April, 2009.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE

---

[6]Blue Water complains that *Peacock* represents a distortion of Rule 803(1), which would allow the exception for present sense impressions to "swallow the rule" of excluding hearsay.  (Doc. 137 at 19).  This is an argument for the Eleventh Circuit, not for a district court bound to follow its holdings.