IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 07-0754-WS-M ) |
| BLUE WATER OFF SHORE, LLC, | ) ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on Blue Water's motion in limine to exclude evidence of the Draeger 7110 breath alcohol test. (Doc. 165). New Hampshire filed a response, (Doc. 194), to which Blue Water filed an unauthorized reply. (Doc. 198). New Hampshire filed a sur-reply, (Doc. 200), and the motion is ripe for resolution. Also before the Court is New Hampshire's motion to strike the affidavit of toxicological expert Robert Zettl (which was submitted by Blue Water in support of its motion in limine), (Doc. 195), and Blue Water's response. (Doc. 199). Also pending is New Hampshire's motion in limine to strike and exclude dispute or criticism of BAC testing and results, (Doc. 175), to which Blue Water has responded. (Doc. 183).

**I. Motion to Exclude Draeger 7110.**

Between 1½ and two hours after the allision, Cooper was administered a breath alcohol test on the Draeger 7110, on which he scored a 0.14. Blue Water admits that "the Draeger 7110 machine was working properly and that the test results obtained from the Draeger 7110 machine accurately reflect Captain Cooper's breath alcohol level at the time the test was administered." (Doc. 183 at 3). Nevertheless, Blue Water argues that the testing and results must be excluded because there is no expert testimony relating the

result of the testing to Cooper's breath alcohol level at the time of the allision. Without such expert testimony, Blue Water says, the jury can only speculate as to the relation, drawing unreliable and impermissible inferences. (Doc. 165 at 1).

None of the three cases on which Blue Water relies, (Doc. 165 at 2-4), stands for the proposition that, absent expert testimony relating a post-infraction alcohol test to the time of the infraction, the results of the test cannot be presented to a jury. In *McCafferty v. State*, 748 S.W.2d 489 (Tex. Crim. App. 1988), the results of a breath alcohol test taken over two hours after the infraction were admitted into evidence. The appellate court did not state or suggest that this evidence was improperly admitted, but only that it was legally insufficient to meet the prosecution's burden of "exclud[ing] every other reasonable hypothesis except that of the guilt of the accused." *Id*. at 491.

Similarly, in *In re: Barnes*, 266 B.R. 397 (B.A.P. 8th Cir. 2001), the results of a blood alcohol test administered over three hours after the motor vehicle accident were admitted into evidence. *Id*. at 400-01, 403. Again, the Court did not state or suggest that this evidence was improperly admitted but only that the administering officer could not testify as to the dissipation rate of alcohol from the bloodstream unless qualified as an expert to do so. *Id*. at 405. The Court noted that, "because of the technical and complex nature of the issue, we agree with the trial court that the rate of dissipation of alcohol in the blood stream must be proved by expert testimony," *id*., but only to negate the suggestion that the officer could testify to dissipation rates as a layman. The Court then concluded that, without expert testimony, the lower court's determination that the plaintiff failed to prove a blood alcohol level of 0.10 at the time of the accident was not clearly erroneous, but it did not say that a contrary finding would have been insupportable.

The Court in *Desmond v. Superior Court*, 779 P.2d 1261 (Ariz. 1989), affirmatively "h[e]ld that the results of an intoxilyzer test taken within a reasonable time after arrest are relevant and may be admitted into evidence without a foundation relating

the BAC back to the time of the arrest." *Id*. at 1266. While the Court continued that, in such a situation, only the presence of alcohol and not the percentage should be told the jury and that this fact, without more, could not be used to show either a particular percentage at a prior point in time or that the defendant was under the influence at a prior point in time, *id*. at 1267, those restrictions were a creature of statute and, upon its amendment, Arizona courts held that the blood or breath alcohol percentage reflected in the test may be presented to the jury, at least if the test was within two hours of the infraction. *E.g., State v. Gallow*, 914 P.2d 1311, 1313 (Ariz. App. 1995). Whether or not such evidence, without expert testimony, is probative of a particular alcohol level at the time of the infraction, it is probative of the defendant's impairment at the time of the infraction. *Id*.; *see also State v. Guerra*, 958 P.2d 452, 456 (Ariz. App. 1998) ("If a defendant has an alcohol concentration of .10 or more within two hours of driving, it is reasonable to presume that he was under the influence of intoxicating liquor at the time of driving.").

In short, Blue Water has offered no authority supporting the exclusion of the Draeger 7110 test results for want of expert testimony extrapolating those results to the time of the allision. As a backup, Blue Water relies on the more general proposition that a permissible inference "must be based on the common experiences and knowledge of the jury." (Doc. 165 at 2). Since a lay jury cannot be expected to know, from experience or otherwise, how to extrapolate a particular breath alcohol level at the time of the allision from such a reading taken after the allision, Blue Water concludes that presenting the test results would simply "invite the jury to speculate." (*Id*. at 1).

Blue Water's argument overlooks that the crime for which Cooper was arrested is boating "under the influence," which can be established by operating or being in actual physical control of a vessel *either* with a blood alcohol level of .08 or more *or* while "[u]nder the influence of alcohol." Ala. Code §§ 32-5A-191(a), -191.3(a). Blue Water's argument goes only to the first alternative, not the second. The ticket and complaint

completed by Officer Kelley, however, reflects that Cooper was charged under the second alternative, not the first. (Doc. 117, Exhibit 36 at 19).[1] As noted by the Arizona cases cited above, an elevated blood alcohol level at some point after the infraction is probative of being under the influence at the time of the infraction, and Blue Water — which invited the Court to rely on Arizona authorities — has not argued otherwise. Thus, even if the jury may not permissibly infer a particular alcohol level at the time of the allision from the admittedly accurate reading of 0.14 after the allision, it may rely on that reading, along with other evidence in the case, to infer that Cooper was under the influence of alcohol at the critical time.

The test results are also admissible for another reason. Blue Water's case depends largely on the premise that Cooper was sober at the time of the allision and that his intoxication arose only after the allision. The higher the Draeger 7110 reading, the more alcohol Cooper would have needed to consume after the allision in order to account for the reading, and the less likely that post-allision consumption explains the reading.[2] The test results are thus relevant to challenge Blue Water's position.

The motion in limine is **denied**. New Hampshire will be permitted to present evidence of the Draeger 7110 testing and results, at least for the purposes of showing that Cooper was under the influence at the time of the allision and showing the unlikelihood that his alcohol consumption was purely post-allision.[3]

---

[1] Even had Kelley arrested Cooper under the first alternative, it is not clear that New Hampshire would be precluded from proceeding under the second.

[2] Zettl opines that Cooper would have required seven to eight ounces of 80-proof liquor in order to generate the reading of 0.14. Given 41 minutes to do so, Zettl says this amount of consumption "is certainly possible and not at all unrealistic." (Doc. 170, Exhibit A at 3). According to Blue Water, the time available was about 30 minutes, and several readings of the evidence would support shorter periods.

[3] The Court need not, and does not, resolve whether the results are also admissible as evidence of Cooper's breath alcohol level at the time of the allision.

## II. Motion to Strike Affidavit.

Blue Water presented Zettl's affidavit for the proposition that the Draeger 7110 test results are not a reliable or accurate indicator of Cooper's breath alcohol level at the time of the allision; that it would be reliable for this purpose only had a proper retrograde extrapolation been done; that a valid retrograde extrapolation would require two tests an hour apart (in order to determine if the breath alcohol level was rising or falling); and that neither these two tests nor other elements of a proper retrograde extrapolation were accomplished. Zettl's opinion goes only to the admissibility of the test results for the purpose of establishing a breath alcohol level at the time of the allision. As noted above, the results are admissible for other purposes, regardless of whether they are also admissible for the purpose Zettl addresses. Nevertheless, because Blue Water likely will seek to introduce this testimony at trial in order to limit the impact of the test results, the Court addresses New Hampshire's motion to strike.

As Blue Water has insisted, Zettl offered two, and only two, opinions in his report: (1) that Cooper had time and opportunity to consume enough alcohol after the allision to explain the results of the field sobriety tests and the Draeger 7110 test; and (2) that Cooper was not under the influence of alcohol at the time of the allision. (Doc. 170 at 2; *id.*, Exhibit A at 3-4). The opinions expressed in Zettl's affidavit plainly do not fall within the former opinion. Nor do they fall within the latter opinion, especially since Zettl expressly limited the basis this opinion to his acceptance of the testimony of mate Ronald Rice that Cooper did not drink before the allision and did not display any signs of being under the influence before the allision. (*Id.* at 4).

Zettl's report was required to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Zettl's report does not comply with this requirement with respect to the opinions expressed in his affidavit.

In consequence of Blue Water's failure to disclose these opinions, it "is not

allowed to use that information ..., unless the failure was substantially justified or is harmless." Fed. R. Civ. P.37(c)(1). Blue Water does not argue that its failure was substantially justified; instead, it asserts that the failure is harmless. (Doc. 199 at 3). This is so, it says, because New Hampshire "knew or should have known all along" that, if Zettl "believed" the test results reliably indicated Cooper's breath alcohol level at the time of the allision, he could not have opined that the only scientific explanation for the 0.14 reading was post-allision drinking. (Doc. 199 at 2-3).

This argument fails at multiple points. First, while Zettl called his opinion "scientific," it patently was not. What Zettl said was that, "[t]he only scientific explanation, given Mr. Rice's testimony [that Cooper did not consume alcohol before the event], is that Mr. Cooper consumed alcohol after the event ...." This is not science but simply the logical exercise that any factfinder would go through: if there are two explanations, and I believe a witness when he says that one explanation is wrong, then the other explanation must be right. Because Zettl's opinion was not based on science, it was not inconsistent with an opinion, based on science, that Cooper's test results indicated intoxication at the time of the allision. Zettl's report gave New Hampshire no reason to assume that Zettl held additional, unarticulated opinions (either in general or this one in particular), much less that he would offer them at trial.

More fundamentally, what Zettl may have silently "believed" is irrelevant. The rules required Blue Water to disclose all of the opinions that Zettl would offer and the bases therefor, and those rules would be eviscerated could a party disclose only some of those opinions and later sandbag its opponent at trial with additional, undisclosed opinions by blaming the opponent for relying on the report and not aggressively probing the expert for other opinions he might hold and might ultimately assert. Blue Water supplies no authority for its radical position, and the Court rejects it.

Blue Water also suggests its nondisclosure is harmless because "even a cursory review of the scientific and legal literature on the subject of breath alcohol testing

demonstrates that there are clear problems" with extrapolations. (Doc. 185 at 3). This is merely a variation on Blue Water's meritless argument that a party is not justified in relying on an opponent's report but has the duty to affirmatively negate the existence of additional opinions the expert may hold or expect to present.

Rule 37(c) allows a court to impose an additional or substitute sanction for a failure to comply with Rule 26(a)(2). Blue Water has not argued that some other or lesser sanction is appropriate, and the Court concludes that, to discourage manipulation of rules of procedure that have been thoughtfully crafted to secure the just determination of lawsuits, Fed. R. Civ. P. 1, prohibiting Blue Water from using Zettl to offer expert testimony as set forth in his affidavit is the proper result. *See generally Romero v. Drummond Co.*, 552 F.3d 1303, 1323-24 (11th Cir. 2008) (upholding the exclusion of an expert witness for violation of Rule 26(a)(2) under an abuse-of-discretion standard).

The motion to strike is **granted**. Blue Water will not be permitted to present evidence from Zettl that the Draeger 7110 test results are not a reliable or accurate indicator of breath alcohol level at the time of the allision.

### III.  Motion to Strike or Exclude Criticism of Draeger 7110.

As noted, Blue Water admits that the Draeger 7110 test results accurately reflect Cooper's breath alcohol level at the time of the testing. (Doc. 183 at 1, 3). This largely resolves New Hampshire's motion, and the preceding discussion resolves the rest.

The motion in limine is **granted in part** and **denied in part**. Blue Water will not be permitted to question or criticize the Draeger 7110 testing or the results thereof as not accurately reflecting Cooper's breath alcohol level at the time of the testing. This order does not preclude Blue Water from challenging, to the extent left open by the Court's other rulings herein, the significance of the test results either to Cooper's blood alcohol level at the time of the allision or to whether he was under the influence of alcohol at the time of the allision.

DONE and ORDERED this 4th day of May, 2009.

                                                                       s/ WILLIAM H. STEELE
                                                                       UNITED STATES DISTRICT JUDGE