IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NEW HAMPSHIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION 07-0754-WS-M |
| BLUE WATER OFF SHORE, LLC, | ) ) ) | |
| Defendant. | ) | |

**ORDER**

This case is set for trial on May 5, 2009.  The case has been extensively litigated, including without limitation cross-motions for summary judgment and almost 20 motions in limine, not including subparts.  Nevertheless, it was not until Blue Water filed its proposed jury charges on April 28, 2009, one week before trial, that it revealed it takes the position that the two exclusions in the Policy are ambiguous and that the jury must interpret their meaning.  The Court upon review of the charges immediately ordered expedited briefing on the matter since, as all parties concede, whether an insurance policy is ambiguous is a question of law for the Court and not a question of fact for the jury. (Doc. 219 at 2; Doc. 223 at 1; Doc. 224 at 4).

The parties were advised in March 2008 that they would be required, as part of their joint pretrial document preceding the final pretrial conference, to submit "[a] list and description of any motions (including motions in limine) pending or contemplated." (Doc. 23, Attachment at 3, ¶ 4.F).  Although Blue Water identified eleven contemplated pretrial motions, resolving the legal question of the Policy's ambiguity was not among them.  (Doc. 155 at 131-32).  And although Blue Water actually filed additional pretrial motions not listed in the joint pretrial document, it filed nothing concerning ambiguity.

As noted, Blue Water admits that whether the Policy is ambiguous is a question of

law that must be decided by the Court.  Because it must be decided by the Court, it must be raised to the Court and briefed to the Court, with an opportunity for New Hampshire to respond with its own briefing.  Because Blue Water intends to present evidence and argument to the jury concerning the interpretation of the Policy it would like the jury to adopt, the question of ambiguity must be raised, briefed and decided prior to trial.

The entire purpose of the Court's pretrial motion practice is to ensure that this process advances smoothly and fairly, that legal matters are presented and ruled on before trial, that this occurs in a thoughtful and considered manner, and that the time of the jury, the parties and the Court is not wasted in dealing with legal matters that could and should have been addressed previously.  The more involved the matter, the more these considerations come into play.  The construction of an insurance policy or any portion of it is not a question that can be asserted on the fly at trial and resolved in a matter of minutes.  Blue Water's own recent briefing  asserts that not just one but two Policy exclusions are ambiguous and raises multiple arguments with respect to each provision. New Hampshire's response naturally asserts additional counter-arguments, all requiring an extensive devotion of time and other resources to sift, research and analyze. Moreover, New Hampshire was handicapped in its effort to respond, because the lateness of Blue Water's disclosure of the issue forced the Court to require briefing on an extremely tight schedule.  Blue Water's conduct with respect to this issue represents a stark departure from the spirit if not the letter of the Court's standing order governing final pretrial conference.

## DISCUSSION

The Policy contains two exclusions, which read as follows:

We shall not cover any loss or damage arising out of:
(a)     Any intentional misuse or misconduct, or lack of reasonable care or
        due diligence, in the operation or maintenance of your yacht or trailer;
...
(e)     Any willful misconduct, criminal, or dishonest act by you, your

employees, or person to whom you entrust your yacht ....

(Doc. 223, Exhibit 1 at 24).  New Hampshire relies on the "reasonable care" portion of the first exclusion and the "criminal ... act" portion of the second.

As noted, the threshold issue whether the Policy is ambiguous is a legal one for the Court to resolve.  *E.g., American Resources Insurance Co. v. H & H Stephens Construction, Inc*., 939 So. 2d 868, 873 (Ala. 2006).  "A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is reasonably susceptible to two or more constructions." *Safeway Insurance Co. v. Herrera*, 912 So. 2d 1140, 1144 (Ala. 2005) (internal quotes omitted).  Patent ambiguity must arise, if at all, from the document itself, "by reason of inconsistency or uncertainty in the language employed." *International Paper Co. v. Madison Olsin, Inc*., 985 So. 2d 879, 884 (Ala. 2007).

"If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Lambert v. Coregis Insurance Co.*, 950 So. 2d 1156, 1161 (Ala. 2006).  A dictionary definition "is exactly the result of an examination into the interpretation that ordinary people would give to the word," and reliance on such authorities is encouraged.  *Carpet Installation and Supplies v. Alfa Mutual Insurance Co.*, 628 So. 2d 560, 562 (Ala. 1993).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, Blue Water's assertion of ambiguity in the Policy: is limited to the two provisions it has identified in its brief; is limited to the particular aspects of ambiguity it has identified in its brief; and is limited to the support for its position it has identified in its brief.  All other assertions of ambiguity and support therefor have been waived by Blue Water's failure to articulate them.

## I.  Criminal Acts Exclusion.

Blue Water argues that the criminal acts exclusion is ambiguous in two respects: (1) as to whether it applies if there has been no conviction; and (2) as to whether it applies to misdemeanors.  (Doc. 223 at 3-5).  Blue Water engages in no analysis of Policy language to support its position; it cites no case that has ever held  a similar exclusion to be ambiguous in either of these respects; and it offers no dictionary definitions of the relevant terms.

The word "criminal" is commonly defined as "relating to, involving, or being a crime."  Merriam Webster's Collegiate Dictionary 274 (10th ed. 1993).  "Crime," in turn, is defined as "an act or the commission of an act that is forbidden or the omission of a duty that is commanded by a public law and that makes the offender liable to punishment by that law."  *Id*.; *see also Littlefield v. Acadia Insurance Co*., 392 F.3d 1, 8 (1st Cir. 2004) (using a similar dictionary definition to construe the term "criminal" in a policy exclusion).  Nothing in these definitions supports in the slightest the suggestion that only conduct punishable by more than a year imprisonment is a criminal act.  As the final nail in this coffin, the same source defines "misdemeanor" as "a *crime* less serious than a felony."  *Id*. at 743 (emphasis added).  While the Court has located no authority for the proposition that a "criminal acts" exclusion applies only to felonies (unless the exclusion so states), it has found a number of cases applying the exclusion to misdemeanors.[1]

Nor does anything in the common definition of "crime" or "criminal" suggest that a crime is not a crime, or a criminal act not a criminal act, until and unless there has been

---

[1]*See, e.g., Allstate Insurance Co. v. Burrough*, 120 F.3d 834, 840 (8th Cir. 1997); *Allstate Insurance Co. v. Myers*, 951 F. Supp. 1014, 1017-18 (M.D. Fla. 1996); *Horace Mann Insurance Co. v. Drury*, 445 S.E.2d 272, 273-74 (Ga. App. 1994);  *Allstate Insurance Co. v. Keillor*, 511 N.W.2d 702, 704-05 (Mich. App. 1993), *aff'd in part on other grounds*, 537 N.W.2d 589 (Mich. 1995); *Swisher v. American Home Insurance Co.*, 343 S.E.2d 288, 289 (N.C. App. 1986).

a conviction.  On the contrary, as noted above a crime is a forbidden *act*, which act makes the offender *liable* to punishment.  Likewise, the definition employed in *Littlefield* defines "crime" as "an act committed ... in violation of law ... and for which punishment is imposed upon conviction."  392 F.3d at 8 (internal quotes omitted).  That is, the crime is the act in violation of law, and it exists the moment the illegal act is committed, prior to any conviction.  This is really only common sense; an unsolved murder is still a crime and a criminal act even if the culprit is never identified, as numberless media reports and crime shows attest.  No one discovering a murder victim shrieks, "Help, something short of a crime has been committed!"  While a conviction may provide *proof* of a criminal act, it is not an *element* of the criminal act.  Again, while the Court has found no case holding that a "criminal acts" exclusion applies only if the perpetrator has been convicted (unless the exclusion so states), it has found opinions applying the exclusion in the absence of a conviction.[2]

## II.  Reasonable Care Exclusion.

Blue Water argues that "reasonable care" is an ambiguous phrase and that the exclusion is ambiguous as to whom it applies.  (Doc. 223 at 6-15).  Again, Blue Water cites no case or dictionary supporting its position, although it does offer a weak analysis of Policy language in support of its second objection.

Blue Water notes that what is reasonable to one person may not be reasonable to another.  (Doc. 223 at 6).  This argument, however, reflects only that persons can disagree

---

[2]*See, e.g., Scalise v. Metropolitan Group Property and Casualty Insurance Co.*, 2003 WL 24043984 at *2 (D. Conn. 2003); *Allstate Insurance Co. v. Raynor*, 21 P.3d 707, 711 n.4 (Wash. 2001); *cf. Allstate Insurance Co. v. Barron*, 848 A.2d 1165, 1177 (Conn. 2004) ("[A] reasonable policy holder would understand the phrase 'criminal acts' to refer to conduct for which a person could be convicted and punished."); *James v. Louisiana Laborers Health and Welfare Fund*, 29 F.3d 1029, 1034 (5th Cir. 1994) (explaining the "illogic" of a rule that would preclude a plan's reliance on an exclusion for injuries sustained in the commission of a felony, absent a conviction).

whether certain conduct reflects reasonable care, not that persons of ordinary intelligence disagree on what the term means.

The ordinary meaning of reasonable care, albeit in a legal context, is the care a reasonably prudent person would exercise in similar circumstances.  *E.g*., Alabama Pattern Jury Instruction 28.02.  Although "[t]he court should not define words it is construing based on technical or legal terms," *Safeway Insurance Co. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005), Blue Water has failed to articulate a competing definition, much less a competing reasonable definition, and so has failed to  demonstrate the existence of an ambiguity.  At any rate, even a layman otherwise unfamiliar with the term[3] would necessarily conclude that "reasonable care" is care that is reasonable, and care can only be reasonable (or unreasonable) in light of the circumstances presented.  In short, there is no reason to suspect that a person of ordinary intelligence reviewing the term would believe it to mean anything other than the care a reasonably prudent person would exercise in similar circumstances.

The exclusion applies to "[a]ny ... lack of reasonable care ... in the operation ... of your yacht."  Blue Water argues the exclusion is ambiguous because, unlike the criminal acts exclusion, it does not expressly identify the class of persons whose lack of reasonable care falls within the exclusion.  (Doc. 223 at 11-15).  Blue Water muses whether the exclusion could be triggered by the conduct of an absent owner, or of a thief, but these are idle speculations.  New Hampshire applied the exclusion to the conduct of Captain Cooper as he navigated the Vessel into a submerged wall, so the only question is whether the exclusion is ambiguous as to whether it applies to a captain's lack of reasonable care while operating a covered vessel.

The answer to this is obvious.  A "lack of reasonable care ... in the operation" of a vessel cannot avoid capturing a lack of reasonable care by a person operating the vessel

---

[3]A Google search reveals approximately 1.7 million hits for the phrase "reasonable care."

with the consent of the insured.  Indeed, Blue Water explicitly admits that the exclusion, "[a]s written, ... could [apply to] anyone's failure [to use reasonable care] — from the owner, to the captain ...."  (Doc. 223 at 12).

### III.  Latent Ambiguity.

Blue Water argues that, even if the Policy language is unambiguous, testimony by New Hampshire's representative raises a latent ambiguity which must be resolved by the jury.  In that testimony, the deponent expressed uncertainty whether the criminal acts exclusion applies to misdemeanors or whether the reasonable acts exclusion applies to captains operating the Vessel.  She was unsure under what factual circumstances a captain might or might not have been exercising reasonable care, but she was sure the criminal acts exclusion does not apply if Cooper is not convicted of boating under the influence. (Doc. 223, Exhibit 2).

"An ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings."  *Thomas v. Principal Financial Group*, 566 So. 2d 735, 739 (Ala. 1990).  For the proposition that a contracting party's interpretation of what unambiguous contract language means can create a latent ambiguity, Blue Water relies exclusively on *Thomas*.  (Doc. 223 at 5, 14-15).  The Court in *Thomas* found a latent ambiguity based on a listing of six circumstances, the last of which was the apparent confusion of two claims examiners as to what the policy language meant.  566 So. 2d at 739-40.

*Thomas* does not hold that patently unambiguous policy language becomes ambiguous simply because one party to the contract invests the language with other than its unambiguous meaning.[4]  *Thomas* could not have done so, since parol evidence may not

_____

[4]*Thomas* simply listed the claims examiners' apparent confusion indiscriminately in a laundry basket of circumstances, without affirming that this circumstance was

-7-

be introduced "for the purpose of uncovering the parties' alleged 'true intent.'"  *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 796 (11ᵗʰ Cir. 1996) (citing *Gafford v. Kirby*, 512 So. 2d 1356, 1363 (Ala. 1987)).  This is so because the relevant intent is the intent the parties have objectively manifested, not the subjective intent they may have secretly harbored, and that objective intent is conclusively established by the unambiguous language used.  *United Land Corp. v. Drummond Co.*, 990 So. 2d 858, 866 (Ala. 2008); *Murray v. Alfab, Inc.*, 601 So. 2d 878, 886 (Ala. 1992).  Blue Water's proffered testimony as to what New Hampshire's representative thinks the language means is nothing more than an assertion of New Hampshire's purported true, subjective intent, and such an expedition is foreclosed by the unambiguous language employed in the Policy.

Similarly, "the parties cannot create ambiguities by setting forth different interpretations," *Herrera*, 912 F.2d at 1143, and Blue Water is attempting to create an ambiguity by setting forth New Hampshire's interpretation.  Moreover, "no latent ambiguity exists unless the contract is actually susceptible to the meaning contended for by a party," *Moore*, 89 F.3d at 796 (internal quotes omitted), and for the reasons stated above none of the challenged Policy language is susceptible to the interpretation Blue Water champions.

––––––––––––––

important, or sufficient, to its ruling that a latent ambiguity existed.  Blue Water has identified no authority construing *Thomas* as it desires.

There is some question whether *Thomas* represents a majority opinion.  Only three justices concurred in Justice Houston's opinion, with three others concurring only "in the result."  566 So. 2d at 750.  The eighth and final justice wrote separately to "concur in the judgment" in the contract appeal and dissent in the bad faith appeal.  *Id.* at 752 (Maddox, J).  A concurrence in the judgment appears not to be a concurrence in the opinion.  *See ConAgra, Inc. v. Turner*, 776 So. 2d 792, 799 (Ala. 2000) (Lyons, J., "concurs in the judgment affirming the award of compensatory damages and otherwise concurs both in the judgment and the opinion").  If Justice Maddox did not join in Justice Houston's opinion, that opinion is only a plurality opinion, and "[t]he precedential value of the reasoning in a plurality opinion is questionable at best."  *Ex parte Discount Foods, Inc.*, 789 So. 2d 842, 845 (Ala. 2001).

## CONCLUSION

Blue Water requests the Court to rule: (1) that the exclusions are ambiguous; (2) that they should be submitted to the jury for interpretation; (3) that the jury should be instructed to construe the exclusions so as to limit them to the narrowest  application reasonable under the wording; and (4) that the jury should be instructed that any ambiguities in the exclusions must be construed in favor of coverage.  (Doc. 223 at 15).

For the reasons set forth above, these requests, construed as motions, are **denied**. The Court rules as a matter of law that the exclusions are not ambiguous.  Accordingly, their interpretation will not be left to the jury or any instruction be given as to how to go about interpreting them.  The jury will be instructed that the Policy exclusion for criminal acts applies to misdemeanors as well as felonies, regardless of whether there has been a conviction.  The jury will also be instructed that the Policy exclusion for lack of reasonable care applies to any failure of Captain Cooper to exercise the care a reasonably prudent person would exercise under similar circumstances.

DONE and ORDERED this 4th day of May, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE