# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **NEW HAMPSHIRE INSURANCE COMPANY,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 07-0754-WS-M ) |
| **BLUE WATER OFF SHORE, LLC,** | ) ) |
| Defendant. | ) ) |

## ORDER

This matter is before the Court on the plaintiff's motion for new trial. (Doc. 245). The parties have filed briefs in support of their respective positions, (Docs. 245, 248, 250), and the motion is ripe for resolution.

## BACKGROUND

Blue Water owned the TAR BABY, a 61-foot yacht ("the Vessel"). Blue Water obtained a policy of insurance on the Vessel ("the Policy"), with New Hampshire as the insurer. The Policy contained an exclusion for losses arising from any lack of reasonable care or due diligence in the operation of the Vessel. It contained another exclusion for losses arising from the criminal act of the insured's employee.

On the night of August 1, 2007, the Vessel approached Perdido Pass from the east after sailing from Panama City, with Captain James Cooper at the helm and mate Ronald Rice also on board. The Vessel allided with a submerged wall, rendering the Vessel a total loss. Cooper was arrested for boating under the influence in violation of Alabama law.

New Hampshire filed this declaratory action in October 2007, seeking a declaration that coverage is excluded under the reasonable care and criminal acts

exclusions because Cooper was operating the Vessel under the influence of alcohol at the time of the allision. (Doc. 1 at 5-8). Blue Water denied that the exclusions applied and further asserted that New Hampshire was estopped to rely on them because it had not delivered the Policy to Blue Water. Blue Water counterclaimed for breach of contract and bad faith, seeking policy limits of $1.75 million, additional compensatory damages exceeding $250,000, and punitive damages of approximately $3 million. (Doc. 13 at 9-10). The jury returned a verdict for Blue Water on its contract claim and awarded damages in the amount of $1.75 million. The jury returned a verdict for New Hampshire on the bad faith claim. (Doc. 241 Attachment).

## DISCUSSION

New Hampshire identifies three general categories of grounds in support of its motion: (1) legal error; (2) weight of the evidence; and (3) evidentiary error. New Hampshire also "incorporates by reference" its Rule 50 motions. (Doc. 245 at 11).

### I. Legal Error.

New Hampshire insists that the delivery statute on which Blue Water's estoppel defense is based does not apply to the Policy. (Doc. 245 at 2-4; Doc. 250 at 1). This argument was fully briefed on motion for summary judgment, and the Court concluded that the delivery statute does apply to the Policy. (Doc. 149 at 20-21). New Hampshire offers no good reason for reconsidering that ruling.

### II. Weight of the Evidence.

"[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not merely the greater — weight of the evidence." *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 2009 WL 1955609 at *10 n.16 (11th Cir. 2009) (internal quotes omitted). Appellate review "is extremely stringent when

the district court discards the verdict on the ground it is against the great weight of the evidence." *Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 2009 WL 1664432 at *1 (11th Cir. 2009) (internal quotes omitted).

New Hampshire argues the jury's verdict is against the great weight of the evidence to the extent (if any) that it rests on a finding: (1) that New Hampshire did not deliver the Policy to the Flowers Agency ("Flowers"); (2) that Flowers (assuming it did receive the Policy) was not Blue Water's agent for that purpose; (3) that Blue Water was prejudiced by any non-delivery; or (4) that the exclusions were not triggered by Cooper's conduct. (Doc. 245 at 4-10; Doc. 250 at 2-4).[1] New Hampshire marshals evidence that would support a verdict in its favor on each of these points, but other evidence, including that cited by Blue Water, (Doc. 248 at 5-17), reflects that all of these questions could easily have been resolved adversely to New Hampshire. The jury's verdict is not against, or even close to being against, the great weight of the evidence.

## III. Evidentiary Rulings.

New Hampshire challenges two rulings: (1) allowing Cooper to testify at trial, after he invoked the Fifth Amendment at his deposition; and (2) not allowing New Hampshire to present evidence that Cooper pleaded guilty to boating under the influence. (Doc. 245 at 10-11; Doc. 250 at 4-6).

### A. Cooper's Testimony.

New Hampshire took Cooper's deposition during discovery, but Cooper answered

---

[1] Because the parties requested a general verdict without special interrogatories, it is impossible to determine whether the jury ruled for Blue Water because it found the exclusions were not triggered or because it found New Hampshire estopped to rely on them. If the latter, it is impossible to determine whether the jury so found because New Hampshire did not deliver the Policy to Flowers, because Flowers was not Blue Water's agent for purposes of delivery of the Policy, or both.

all substantive questions by invoking his Fifth Amendment right against self-incrimination.  New Hampshire argues it was prejudiced by Cooper's eleventh-hour decision to testify, because it did not have the benefit of his deposition testimony and so could not adequately prepare for cross-examination.  Thus, it concludes, the Court should have excluded Cooper's testimony under Federal Rule of Evidence 403.  (Doc. 245 at 10; Doc. 250 at 5).

Rule 403 allows the exclusion of relevant evidence only if its probative value is "substantially outweighed by the danger of ... unfair prejudice."  The probative value of Cooper's testimony, as the operator of the Vessel and the person on whose conduct New Hampshire relied in denying coverage, is obvious.  Because the probative value of Cooper's testimony was high, it would take a great deal of prejudice to substantially outweigh it.

New Hampshire, however, offers only its ipse dixit that its cross-examination was handicapped by not having Cooper's deposition testimony in advance.  The Court heard Cooper's testimony and identified no significant point in it that had not previously been stated by other witnesses or suggested by Blue Water's counsel, which indicates that its content was not a particular surprise to New Hampshire.  Moreover, the Court observed New Hampshire's cross-examination of Cooper, which was quite capable.  New Hampshire's inability to articulate any respect in which not having Cooper's deposition testimony hampered its cross-examination simply underscores the absence of real prejudice.

Moreover, prejudice is pertinent to the Rule 403 analysis only if it is "unfair" prejudice.  Cooper's employment was terminated shortly after the allision in August 2007, and there has been no showing that Blue Water is any way responsible for his invocation of the Fifth Amendment or for his ultimate decision to testify.[2]  Moreover,

---

[2]New Hampshire's incautious suggestion that the sequence of events represents Blue Water's "trial tactic," (Doc. 250 at 5), is utterly devoid of substantiation.

Blue Water admits that it would have suffered no prejudice had it taken Cooper's deposition, (Doc. 245 at 10; Doc. 250 at 5-6), yet it took no steps to do so once it learned that he would testify at trial.  Immediately upon being advised of Cooper's willingness to testify, Blue Water on Wednesday, April 29 notified New Hampshire.  (Doc. 248 at 18).  The jury was selected and trial begun the following Tuesday, May 5, and Cooper did not testify until later in the week.  New Hampshire says it was busy with other trial preparation issues, (Doc. 250 at 5), but all this means is that it decided other matters were more important than deposing Blue Water's key witness.[3]  Having one of New Hampshire's two counsel of record depose Cooper might have been inconvenient, but it has not been shown to have been impossible or even nearly so.  Under such circumstances, New Hampshire's election not to depose Cooper does not render any resulting prejudice unfair.

In summary, Cooper's testimony was not properly excludable under Rule 403, and the Court committed no error in allowing him to testify.


### B.  Guilty Plea.

As set forth in previous orders, a state district judge checked a box on a form indicating that Cooper pleaded guilty to boating under the influence and was adjudicated guilty.  There was evidence from Cooper's criminal attorney that Cooper did not in fact plead guilty but stipulated that the state could prove a prima facie case, as part of a

---

[3]New Hampshire cites to briefing and jury charges as filling its calendar.  (*Id*.).  A second set of jury charges was required only because the parties, in plain violation of the final pretrial order, failed to confer in good faith to develop joint charges in April, instead filing 59 disputed and no agreed charges — not even on the elements of an action for breach of contract.  (Doc. 219).  The late briefing was required because the initial jury charges revealed for the first time that the parties had huge disagreements on legal issues such as the ambiguity vel non of the Policy, the elements and attributes of abnormal bad faith, and governing agency principles.  (*Id*.).  New Hampshire was thus largely the author of its own pretrial workload.

strategy to quickly move the case to circuit court.  As the Court noted, this version of events appeared almost certainly to be correct, since: (a) such stipulations are frequently employed for just this reason; (b) Cooper immediately appealed his conviction to circuit court and pleaded not guilty; (c) the form did not include a blank for such a stipulation, so that guilty as charged was the most nearly accurate box to be checked; and (d) New Hampshire was unable to articulate any conceivable reason Cooper would plead guilty yet immediately appeal his conviction and deny guilt.  Under these circumstances, the probative value of the evidence was minuscule, and it was substantially outweighed by considerations of confusion of the issues, misleading the jury, and waste of time.  Accordingly, the Court granted Blue Water's motion in limine to exclude the evidence.  (Doc. 206).

New Hampshire does not disagree with the Court's ruling.  Instead, it argues that, once Cooper took the stand, all concerns of confusion, misleading, and wasted time melted away.  (Doc. 245 at 11).  New Hampshire does not explain how this is so, and it plainly is not.  As the Court previously noted, introducing evidence of the plea would require testimony from various witnesses to address the distinctions between a plea and a stipulation, to explain the paperwork that should have been in the file had Cooper truly pleaded guilty, and other matters of Alabama criminal law and procedure.  (Doc. 206 at 2-3).

New Hampshire suggests it was prejudiced because the jury was "left to wonder" as to the status of the criminal charge.  (Doc. 245 at 11).  This could hardly be so, since New Hampshire repeatedly elicited from Cooper that his criminal charge remains pending in circuit court.

In summary, the evidence was properly excludable under Rule 403, and the Court committed no error in excluding it.

**IV.  Rule 50 Arguments.**

Most of New Hampshire's unelaborated arguments addressed Blue Water's bad faith claim. (Docs. 234, 239). Since New Hampshire prevailed on that claim, these points are irrelevant. All but one of the remaining arguments challenged the sufficiency of the evidence to reach the jury, but there was far more than sufficient evidence presented to the jury as to each claim and defense asserted. New Hampshire's final argument summarizes its position concerning the delivery statute, addressed in Part I.

## CONCLUSION

For the reasons set forth above, New Hampshire's motion for new trial is **denied**.

DONE and ORDERED this 20th day of July, 2009.

                                              s/ WILLIAM H. STEELE
                                              UNITED STATES DISTRICT JUDGE